### SEA–LAND SERVICE, INC., Plaintiff,

v.

### Elizabeth Hanford DOLE, et al., Defendants.

### Civ. A. No. 84–3831.

United States District Court, District of Columbia.

April 1, 1986.

Edward M. Shea, John E. Vargo, Washington, D.C., for plaintiff.

George P. Williams, Asst. U.S. Atty., James F. Ford, Office of Chief Counsel, Federal Maritime Admin., Washington, D.C., for defendants.

Robert T. Basseches, Shea & Gardner, Washington, D.C., for intervenor.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Plaintiff Sea-Land Service ("Sea-Land") brings this action under the Merchant Marine Act of 1936, 46 U.S.C. §§ 1101 *et seq.* (1982) ("Act"), challenging the grant of an Operating Differential Subsidy ("ODS") to one of its competitors, intervenor American President Lines ("President Lines" or "APL"). Named as defendants are the Secretary of Transportation, the Maritime Subsidy Board ("Subsidy Board" or "MSB") and two of the Board's members.

Plaintiff maintains that ODS was granted President Lines for the operation of two foreign-built ships, notwithstanding the fact that the Subsidy Board, to which has been delegated the task of administering the Act, did not hold an evidentiary hearing as required by Section 605(c) of the Act, 46 U.S.C. § 1175(c), or make the requisite findings of fact under Section 601(a)(4), 46 U.S.C. § 1171(a)(4). Because of the failure to comply with these statutory requirements, Sea-Land asks this Court to declare the action taken by the Board invalid and to enjoin the award of ODS until the government complies with the mandated procedures.

The parties have filed cross-motions for summary judgment and have ventilated the issues at oral argument. For the reasons set forth below, the Court grants the motions of defendants and intervenor President Lines for summary judgment.

## BACKGROUND

Both plaintiff and intervenor operate vessels along the transpacific trade routes; however, while plaintiff operates unsubsidized, APL has been the beneficiary since 1978 of a 20-year ODS contract. Pursuant to that contract and the Act, APL receives a subsidy sufficient to equalize its operating costs with those of its foreign competitors. Such subsidies are granted under the Act when the Secretary of Transportation, through her delegate, finds that "the granting of the aid applied for is necessary to place the proposed operations of the vessel or vessels [of the applicant] on a parity with those of foreign competitors, and is reasonably calculated to carry out effectively the purposes and policy of th[e] Act." Section 601(a)(4). In making this finding, the Secretary is not required to hold an evidentiary hearing. However, where a trade route is already serviced by "existing service," the Act requires that, before additional subsidized service may be added to the route, affected parties must be given notice and the opportunity to air their objections in a public hearing. Section 605(c). The Secretary must then determine that the grant of an additional subsidy "is necessary ... to provide adequate service by vessels of United States registry." *Id.*

Plaintiff argues that the Subsidy Board did not follow the procedures mandated by Sections 601(a)(4) and 605(c) when it allowed APL to add to its subsidized fleet two foreign-built vessels acquired from Neptune Orient Lines ("NOL vessels"). Although ODS is normally granted only for the operation of U.S.-built vessels, special legislation enacted in 1984, Pub.L. No. 98–151, allowed APL and another ODS contractor to acquire an aggregate of six foreign-built vessels, which would then be deemed U.S.-built for purposes of the ODS program. *Id.* § 134. The legislation was designed to make up for a funding shortfall in another program under the Act which provides for the grant of Construction Differential Subsidies ("CDS(s)") designed to equalize the costs of U.S. and foreign construction of vessels. *See* 46 U.S.C. §§ 1151–1159.

The Subsidy Board and APL take the position now, as they did when the latter's application for a subsidy for the NOL vessels was being considered, that the procedures required by Sections 601 and 605 were not called into play by APL's acquisition of the two vessels. Because the vessels served only to replace other ships taken out of APL's fleet, APL and the defendants maintain that no additional service was being subsidized. Rather, they con-

tend that President Lines was merely performing its contractual duty to replace obsolete vessels according to the schedule incorporated into its ODS contract.

Plaintiff challenged the Subsidy Board's determination that no hearing or findings were required before ODS for the NOL vessels could be awarded to APL by filing an application for reconsideration with the Board. Although it found the application to be untimely, the Board nevertheless considered it and rejected it as meritless. Thereupon, plaintiff petitioned the Secretary for review, which was denied. This suit followed.

## ANALYSIS

### I. Justiciability

President Lines has challenged plaintiff's standing to assert a claim under Section 605(c), while defendants have argued that plaintiff cannot challenge the Board's findings under Section 601. Because the Court rules adversely to plaintiff on the merits, it need not examine the issues of standing and reviewability further.[1]

### II. Merits

#### A. Replacement of Vessels Under President Lines' ODS Contract

The contract under which APL received ODS requires that vessels in its subsidized fleet be periodically replaced according to a specified schedule. Initially, the contract authorized APL to operate a subsidized fleet of 23 vessels; that number was increased to 24 in 1982 after a full Section 605(c) hearing. In 1979, APL withdrew three vessels from its fleet, the S.S. Presidents Lincoln, Tyler and Grant. Those ships were to be replaced by three "C–9"

container vessels. In order to fund construction of the C–9 vessels at a time when construction differential subsidy monies were not available, APL availed itself of Section 510 of the Act, 46 U.S.C. § 1160. That section provides that an operator may trade in its obsolete vessels to the government, in return for a credit to be applied against the cost of constructing new vessels. Accordingly, APL turned in three "C–6" vessels to the Military Sealift Command. The two NOL vessels were acquired, then, as replacements for two of the three C–6 vessels. The third C–6 was not replaced, leaving APL with a subsidized fleet of 23 vessels.[2]

Plaintiff vigorously insists that APL in fact added two ships to its fleet when it acquired the NOL vessels. That contention, which goes beyond a mere misreading of the record, is completely meritless. While it is true that, for a time, APL was operating only 21 vessels, it is beyond cavil that APL was *authorized* to operate 23 or 24 vessels. And although it is true that the Board *may* review an operator's ODS grant "in light of conditions as they ... exist" at the time that the operator takes advantage of that grant, *Matson Orient Lines, Inc.*, 5 F.M.B. 410, 418 (1958), the possible exercise of such discretion does not—contrary to plaintiff's assertions—amount to a "use it or lose it" rule. The Subsidy Board quite properly exercised its discretion in declining to review the 23 ship authorization,[3] finding instead that it was perfectly acceptable for APL to acquire the NOL vessels to replace ships previously withdrawn from its fleet. *See* Admin.Rec. at 179–84.

A review of the record, then, reveals that the two NOL vessels did not add to its

---

**1.** The Court notes, however, that plaintiff does appear to be within the "zone of interests" protected by the Act. *See Sea-Land Service, Inc. v. Dole,* 723 F.2d 975, 977–78 (D.C.Cir.1983). Whether, as APL argues, the relief sought by Sea-Land would fail to redress the injury alleged need not be further considered.

**2.** The MSB denied APL permission to replace the third C–6 vessel and formally reduced its authorization to the operation of 23 subsidized ships. Admin.Rec. at 189.

**3.** At the time that the Board made its decision on the NOL vessels, in April 1984, APL was authorized to operate 24 vessels. The Board did find it appropriate to reduce that authorization to 23 vessels, but found no need to question the propriety of a 23 vessel fleet, merely because APL's replacement schedule left it with a fleet of 21 vessels for some three years.

subsidized fleet. Plaintiff still maintains, however, that there is no "replacement" exception to the hearing requirement of Section 605(c) and that, because those vessels added to APL's total capacity, the requirements of Sections 605(c) and 601 could not be circumvented.

### B. Need for a Section 605(c) Hearing

■ In interpreting and developing its own guidelines and precedents, an agency such as the Subsidy Board will be given wide latitude by a reviewing court. *See American Maritime Ass'n v. United States,* 766 F.2d 545, 560 (D.C.Cir.1985) (citing *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). The Board has consistently declined to hold Section 605(c) hearings whenever an operator replaces one of its vessels. *Delta Steamship Lines, Inc.,* 21 SRR [4] 961 (MSB 1982); *Waterman Steamship Corp.,* 13 SRR 472, 476 n. 2 (MSB 1972). Such a construction of the Act is a perfectly reasonable one and, consequently, will not be second-guessed upon judicial review. *See Sea-Land Service, Inc. v. Dole,* 723 F.2d 975, 979 (D.C.Cir.1983). As the Board has noted,

> [i]f Section 605(c) were to be interpreted as requiring that a subsidized operator would have to go through a new hearing every time it replaced its vessels, litigation before the Board would be continuous and interminable. Such a state of affairs would seriously impede new building programs by the subsidized operators and tend to render the operating subsidy program unworkable.

*Waterman,* 13 SRR at 480 (attach. A). ■ Moreover, vessel replacement does not require additional hearings even when the replacements add to the total capacity of the operator's fleet. *Delta,* 21 SRR at 967. It is understood that replacement vessels will—and ought to—add to the productivity of an operator's fleet. *Id.* Such replacement is normally taken into account at the time that the initial ODS contract is negotiated. *Id.* at 965–68. The

intervenor's case certainly presents no exception. As long as the acquisition of new vessels is "consistent with the notion of 'replacement,'" *id.* at 967, no new Section 605(c) is required. What amount of additional capacity would disqualify vessel acquisition as "replacement" is not clear. However, it certainly cannot be said that the Board abused its discretion in finding that an 18 percent increase in the net capacity of APL's fleet, Admin.Rec. at 177, was "consistent with the notion of replacement," when precisely that percentage increase in capacity was approved by the Board on a prior occasion. *Delta,* 21 SRR at 966 n. 12.

In sum, there appears to be no reason in law or fact why the Board should have held a Section 605(c) hearing in connection with President Lines' acquisition of the two NOL vessels.

### C. Adequacy of Section 601 Findings

■ When a subsidized operator replaces one or more of its vessels, no Section 601(a)(4) finding of necessity for a subsidy is required "in the absence of any contractual changes." *Delta,* 21 SRR at 968. Nevertheless, the Board did make appropriate findings of fact concerning the need for a subsidy to operate the NOL vessels. It noted, among other things, that APL was competing with a fleet of recently built and technologically advanced foreign vessels. Admin.Rec. at 178. Even if the Board overestimated the stiffness of the foreign competition faced by APL, it is not for a reviewing court to substitute its judgment for that of a fact-finder better versed in the relevant subject matter. Such is particularly the case given that the Board has conducted extensive and continuous review of the operations of President Lines. *See* Admin.Rec. at 183–84. Moreover, while a reviewing court may entertain a challenge to the Board's adherence to the procedures prescribed by the Act, the substance of the Board's decisions are essentially nonreviewable. *American President Lines v. Federal Maritime Board,* 112 F.Supp. 346, 348 (D.D.C.1953); *Moore-*

---

**4.** The designation "SRR" refers to Pike and Fisher's Shipping Regulation Reports.

*McCormack Lines, Inc. v. United States,* 413 F.2d 568, 580–82 (Ct.Cl.1969).

Plaintiff's challenge to the Board's findings under Section 601 is unsupported.

## CONCLUSION

Plaintiff Sea-Land has presented to the Court no reason in law or fact to overturn the decision of the Subsidy Board to extend President Lines' ODS coverage to include the two NOL vessels. The record demonstrates that these ships were indeed replacement vessels. With that in mind, the Board properly exercised its discretion in declining to hold a Section 605(c) hearing on APL's application for ODS for those vessels. Similarly, with the full record of APL's subsidized operations before it, the Board made findings pursuant to Section 601 sufficient to satisfy the procedural requirements of the Act.

Accordingly, for the reasons stated above, and because there are no material issues of fact in dispute, the Court grants the motions of defendants and the intervenor American President Lines for summary judgment.[5]

---

5. In view of the disposition of this matter as set forth in this Memorandum Opinion and accompanying Order, defendants' motion to strike certain portions of plaintiff's Supplemental Appendix, together with all references thereto contained in plaintiff's memoranda, is denied as moot.